USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  4/18/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JANE J. DAVIS,                                    :

                Plaintiff,      :     **REPORT AND**
                                         **RECOMMENDATION**
   -against-                                    :     **TO THE HONORABLE**
                                         **ANALISA TORRES**

COMMISSIONER OF SOCIAL           :
SECURITY,                                         15cv6301-AT-FM
                                                  :
                Defendant.
------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

       Pro se plaintiff Jane J. Davis ("Davis") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to challenge a determination of the Commissioner of Social Security ("Commissioner") regarding her receipt of disability insurance benefits ("DIB").  The Commissioner has filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the basis that Davis failed to exhaust her administrative remedies.  (ECF No. 15).  Although the relevant procedural history is complex, the applicable legal principles are not.  Applying those principles, the Commissioner's motion should be granted, and this action dismissed.

I.      Factual and Procedural Background[1]

Davis began receiving DIB in February 1994. (Lingen Decl. ¶ 3(a)).[2] Many years later, in December 2013, Davis began a part-time position with Goodwill Industries ("Goodwill"). (Davis Affirm. at 10, ¶ 3(b)). Upon learning this, the Social Security Administration ("SSA") sent Davis a letter, dated January 31, 2014, explaining that it planned to investigate how her employment would affect her DIB. (Lingen Decl., Ex. 1). Thereafter, on February 7, March 28, and May 27, 2014, the SSA sent additional letters, which informed Davis that SSA records showed she had received earnings as early as January 1995, <u>after</u> she began receiving DIB. Accordingly, the SSA asked Davis to provide more information. (Am. Compl., Ex. A at 1-2 (February 7); Lingen Decl., Ex. 2 at 3-7 (March 28), 8-12 (May 27)). The March 28 and May 27 letters also warned Davis that the SSA believed she had exhausted a nine-month trial work period in August 1996, and, therefore, erroneously received DIB while performing substantial gainful activity

---

[1]     The factual recitation in this Report and Recommendation is derived from Davis's Amended Complaint, the declarations and exhibits annexed to the Commissioner's motion papers, and Davis's opposition papers. (See ECF No. 10 ("Amended Complaint" or "Am. Compl."); ECF Nos. 16-1 through 16-3 (Decl. of Katherine Rae Lingen, dated Feb. 3, 2016 ("Lingen Decl.")); ECF No. 16-4 (Decl. of Joseph Cafaro, dated Feb. 3, 2016 ("Cafaro Decl.")); ECF No. 19 ("Affirm. of Jane J. Davis in Opp. to Mot., dated Mar. 3, 2016 ("Davis Affirm.")); ECF No. 23-1 (Decl. of Bryant Wilder, dated Apr. 4, 2016 ("Wilder Decl."))).

[2]     Davis maintains she did not begin receiving benefits until April 1996. (Davis Affirm. at 9, ¶ 3(b)). Although she provides documentation which indicates that her disability first was established on April 25, 1996, (see id., Ex. A at 5), it appears that she applied for DIB on September 15, 1994, with an onset date of August 16, 1993, and that her first month of entitlement was determined to be February 1994, (see Am. Compl., Ex. Misc. B at 6-7). Accordingly, while her first payment may not have arrived until April 1996, the relevant date is February 1994, when she became subject to the SSA's rules regarding maintaining employment.

("SGA") between April and December 1998, and during and after January 2014. (Lingen Decl., Ex. 2 at 5-6, 10-11).[3] In response, Davis sent the SSA two letters, in which she alleged that its records incorrectly showed she had worked in 1995, 1996, and 1998; Davis also requested a hearing. (See Am. Compl., Ex. Misc. A at 14 (letter dated Apr. 8, 2014), 15 (letter dated June 4, 2014)). It is unclear whether the SSA ever received these letters.

On July 22, 2014, the SSA issued a decision that Davis was not entitled to the DIB payments she had received between April and December 1998, and during and after January 2014. (Lingen Decl., Ex. 2 at 13-15). The SSA further advised Davis that, if she disagreed with this decision, she had sixty days to request a de novo hearing before

---

[3] The SSA Regulations permit beneficiaries to work during a trial period, while still receiving DIB, so that they can test their ability to work. The trial period is limited to working for pay in nine separate months, whether or not consecutive, over a five-year period. See 20 C.F.R. § 404.1592. The SSA determined that Davis's nine trial work months were January 1995 and January through August 1996, during which time she worked for Motorola Solutions, Inc., or Environmental Group Inc., or both. (See Lingen Decl., Ex. 2 at 4-5, 9-10).

Once a beneficiary exhausts her trial work period, she enters a three-year "reentitlement period." If she performs SGA during the reentitlement period, she remains entitled to DIB for the first such month, and the two months thereafter. After that, her DIB will cease, but if she stops engaging in SGA during the reentitlement period, she becomes reeligible for DIB automatically. See 20 C.F.R. § 404.1592a. The SSA determined that Davis began engaging in SGA in January 1998, during her reentitlement period, based on records indicating that she worked for the Corporation for National and Community Service, a federal agency in Washington, D.C. (See Lingen Decl., Ex. 2 at 4-5, 9-10; see also id., Ex. 7 at 13; https://www.usa.gov/federal-agencies/corporation-for-national-and-community-service (last visited Apr. 11, 2016)). She therefore remained entitled to DIB from January through March 1998, but became ineligible in April 1998. That status did not change until December 1998, when she ceased SGA and became reentitled to DIB. Thereafter, her three-year reentitlement period ended. Accordingly, when she again engaged in SGA at Goodwill beginning in January 2014, she no longer was covered by its special provisions. (See Lingen Decl., Ex. 2 at 4-5, 9-10).

3

an Administrative Law Judge ("ALJ") by submitting a form HA-501. (Id. at 14-15). On July 23, before she received the SSA's July 22 decision, Davis wrote another letter to the SSA contesting her work history. (Am. Compl., Ex. Misc. A at 17-18). The same day, Davis also sent a copy of her letter to Congressman Charles B. Rangel, (id., Ex. B at 3-4), whose office forwarded it to the SSA on August 7, (Davis Affirm., Ex. E). The SSA responded to Congressman Rangel on August 29, enclosing a copy of its July 22 decision and reiterating that Davis could request an ALJ hearing within sixty days of July 22 by submitting form HA-501. (Am. Compl., Ex C). Although Davis received a copy of this letter, and maintains that she made such a request, (see Davis Affirm. at 10, ¶¶ 3(c)-(d)), the SSA has no record of receiving a form HA-501 from Davis, (see Lingen Decl. ¶ 3(d)).[4]

The SSA then stopped making DIB payments to Davis, beginning with her September 2014 disbursement. (See Davis Affirm. at 10, ¶ 3(d); see also Am. Compl., Ex. N (online SSA disbursement records)). In December 2014, Davis filed complaints with the Federal Trade Commission and her local police station, in which she alleged that she had been the victim of identity fraud. (Am. Compl., Ex. E; see also id., Ex. F at 2 ("The overpayment was due to identity theft and or the [f]raudulent use of my personal information.")). Davis also wrote another letter to the SSA protesting the termination of

---

[4] Davis attaches to her Amended Complaint a copy of the form HA-501 that she purportedly mailed to the SSA, dated September 30, 2014. (See Am. Compl., Ex. D). Curiously, however, the second page of the form HA-501 she claims to have mailed in September 2014 bears an issue date of January 2015. (See id. at 2).

her benefits.  (Id., Ex. Misc. A at 6-8 (letter to SSA dated Dec. 23, 2014)).  In January and February 2015, Davis continued to contact the SSA repeatedly, by both letter and telephone, to protest the termination of her benefits, and to dispute that she had been overpaid.  (See id., Ex. Misc. B at 6-7 (letter from SSA dated Apr. 1, 2015)).  The SSA responded on at least two occasions, reaffirming its prior decision and informing Davis that her overpayment balance was $6,023.40.  (Id.; see also id. at 4-5 (letter from SSA dated Jan. 20, 2015)).

Thereafter, on April 13, 2015, the SSA sent Davis a Notice of Award. (Lingen Decl., Ex. 3).  The purpose of this notice was twofold:  first, it informed Davis that she had reached full retirement age in June 2014 and, therefore, was entitled to old-age benefits as of July 2014;[5] second, it explained how Davis's $6,023.40 overpayment balance[6] would be assessed, taking into consideration the retroactive old-age benefits she also was due.  (Id.).  Although the SSA's calculations and reasoning are difficult to follow, the result appears to be that Davis's January through June 2014 DIB overpayment and July 2014 through April 2015 retroactive old-age benefits essentially canceled each other out, leaving her with a balance due of $3,820.20 for the April through December 1998 overpayment.

---

[5]  Beneficiaries who remain entitled to DIB up until the month they attain full retirement age are automatically converted from DIB to old-age benefits without the need to reapply.  20 C.F.R. § 404.310(c).

[6]  The letter clarified that the overpayments consisted of DIB payments to Davis from April through December 1998 and January through June 2014.  (Id.).

Next, Davis submitted a request for a waiver of the remaining overpayment balance, (id., Ex. 4), which was denied on April 22, (see id., Ex. 5). After Davis attended an in-person conference, (see id. ¶ 3(g)), the SSA again denied her waiver request on May 11, (see id., Ex. 6). On June 11, Davis mailed a form request for reconsideration of the denial of an overpayment waiver. (Cafano Decl. ¶ 2(a); id., Ex. A). On June 15, she also filed a discrimination complaint with the SSA. (Am. Compl., Ex. K at 1-7). On June 11 and July 1, the SSA again sent letters to Davis requesting information about her work history since August 1993; the SSA also sought the same information from at least some of her past employers. (Lingen Decl., Ex. 7 (June 11); Am. Compl., Ex. A at 3-7 (July 1)).

On August 3, the SSA sent Davis a schedule explaining how the agency would recoup her remaining overpayment balance of $3,820.20. (Lingen Decl., Ex. 8). Davis sought to contest this decision by form HA-501 dated August 5, (Davis Affirm., Ex. B2);[7] letter dated August 6, (Am. Compl., Ex. Misc. A at 9); and a request for reconsideration form dated August 8, (id., Ex. F at 13-15).[8] While the SSA acknowledged receipt of a letter from Davis during this time frame, (see id., Ex. Misc. B

---

[7] Davis's affirmation contains Exhibits A through G, followed by separate Exhibits A through D. I have referred to the second Exhibit B as "Exhibit B2."

[8] Davis also claims to have submitted a request for reconsideration on September 9, but that form appears identical in all respects to her August 8 form, except that the date has been changed. Both forms are accompanied by the same typewritten narrative, dated August 5. (Compare Am. Compl., Ex. F at 13-15 (August 8), with id., Ex. Misc. A at 11-13 (September 9)).

at 2), it is not clear that the agency received any of her forms. On August 6, Davis filed a second discrimination complaint with the SSA, (id., Ex. K at 8-14),[9] after which she commenced this action on August 10, (ECF No. 2).

On October 6, 2015, without explanation, the SSA did a partial about face, informing Davis that it had determined that she did <u>not</u> work in 1998. (Lingen Decl., Ex. 9). Accordingly, Davis no longer owed an overpayment of $3,820.20 (which the SSA had yet to assess); instead, <u>she</u> was owed an underpayment of $819.70. (<u>Id.</u>). Davis had, in fact, already received this sum. (<u>See</u> Am. Compl., Ex. N). Believing she was still entitled to additional withheld benefits, Davis wrote a letter to the SSA on October 16 requesting review of the October 6 decision; the SSA received that letter and treated it as a formal request for reconsideration. (<u>See</u> Cafaro Decl. ¶ 2(c); <u>id.</u>, Ex. C).

Thereafter, Davis focused her attention on this action. On October 16, before the Commissioner's answer was due, Davis requested an extension of time "to submit pertinent documents in support of [her] case," (ECF No. 8), which I granted on October 28, (ECF No. 9). Davis then filed an amended complaint, dated December 10, along with a number of supporting documents. (ECF No. 10).[10] In brief, Davis contends that the SSA's assertion that she was overpaid is based on work that she never performed,

---

[9]   The SSA denied both of Davis's discrimination complaints on December 1, 2015. (<u>Id.</u>, Ex. P).

[10]   Although Davis did not obtain leave of the Court or the consent of the Commissioner, <u>see</u> Fed. R. Civ. P. 15(a)(2), given her <u>pro se</u> status, that leave would likely have been granted, and the Commissioner does not contend otherwise.

which was erroneously attributed to her due identity theft.  Davis further maintains that the SSA has repeatedly ignored both her requests to investigate this fraud and her attempts to appeal adverse determinations.  (Id.).  She asks that the Court refund six months of benefits, i.e., $5,080, minus whatever amounts have already been reimbursed to her.  (Id. at 10).  She also seeks damages for "harassment, retaliation, [and] threats," as well as "reprimand, dismissal, demotion and training for mostly all Social Security employees, staff and specialists due to incompetence."  (Id.).

On February 3, 2016, the Commissioner filed her motion to dismiss.  (ECF No. 15).  In yet another bizarre twist, the SSA then sent Davis a letter on February 7, which stated, in relevant part:  "Your total overpayment balance is $9157.50 from April 1998 through June 2014.  Your record has been corrected to show that your benefits were suspended April through December 1998 and terminated January through June 2014.  We have placed this overpayment on your record, for collection."  (Davis Affirm., Ex. G).  In response, Davis sent the SSA her own "cease and desist" letter, dated February 9.  (Id., Ex. F).

On February 23, 2016, the SSA denied the two requests for reconsideration that it acknowledges receiving from Davis, (Wilder Decl. ¶ 2; id., Ex. A):  (A) her request dated June 11, 2015, regarding the denial of an overpayment waiver, (see Cafaro Decl., Ex. A); and (B) her request dated October 16, 2015, for additional withheld benefits after the SSA removed her 1998 work history, (see id., Ex. C).  In the course of doing so, the SSA maintained that Davis had been overpaid in both 1998 and 2014 (effectively

reversing the October 6 decision that Davis's October 16 reconsideration appealed) and advised her that she had sixty days to request a de novo hearing before an ALJ by submitting a form HA-501. (Wilder Decl., Ex. A).[11]

On March 3, Davis filed her opposition to the Commissioner's motion to dismiss this action. (ECF No. 19). On April 4, the Commissioner filed a reply. (ECF No. 23). The motion consequently is fully submitted.

II. Relevant Law

A. Standard of Review

Under Rule 12(b)(1), a court must dismiss a complaint if it does not have subject matter jurisdiction over the claims asserted. In resolving the issue of subject matter jurisdiction, a court is not limited to the face of the complaint and may consider evidence outside the pleadings. Phifer v. City of N.Y., 289 F.3d 49, 55 (2d Cir. 2002). The plaintiff has the burden of demonstrating the court's subject matter jurisdiction by a preponderance of the evidence. Id. (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)); see also Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) ("[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.").

B. Exhaustion of Administrative Remedies

Pursuant to the Act, the Government has waived its sovereign immunity to enable a dissatisfied claimant to seek judicial review following a "final decision of the

---

[11] There is nothing to indicate that Davis submitted such a form.

Commissioner of Social Security made <u>after</u> <u>a</u> <u>hearing</u> to which [s]he was a party." 42 U.S.C. § 405(g) (emphasis added). The judicial review provision of the Act does not define the term "final decision," but the SSA has done so in its regulations. See <u>Sims v. Apfel</u>, 530 U.S. 103, 106 (2000); <u>Weinberger v. Salfi</u>, 422 U.S. 749, 766 (1975).

The SSA regulations require claimants to complete a four-step administrative review process in order to obtain a judicially-reviewable final decision. That process consists of: (1) an initial determination; (2) reconsideration; (3) an ALJ decision; and (4) Appeals Council review. See <u>Heckler v. Day</u>, 467 U.S. 104, 106-07 (1984); 20 C.F.R. § 404.900(a). A decision by the Commissioner is not considered "final" under the Act until the claimant has exhausted each of these steps. <u>Mathews v. Eldridge</u>, 424 U.S. 319, 327 (1976). Accordingly, a claimant may not file a suit in federal court until there either has been an adverse decision by the Appeals Council or the Appeals Council has denied the claimant's request for review of the ALJ's decision. 20 C.F.R. § 404.981. A claimant who seeks ALJ review also must make that request within <u>sixty</u> <u>days</u>. <u>Id.</u> § 404.933.

The exhaustion requirement may be waived in exceptional circumstances, such as when (1) "the claim is collateral to a demand for benefits," (2) "exhaustion would be futile," or (3) "[a] plaintiff[] would suffer irreparable harm if required to exhaust [her] administrative remedies before obtaining relief." <u>Abbey v. Sullivan</u>, 978 F.2d 37, 44 (2d Cir. 1992). For example, in <u>Bowen v. City of New York</u>, the Supreme Court recognized a limited exception to the exhaustion requirement because the plaintiffs' benefits claims

were collateral to the allegations in their class action suit challenging SSA policy and many class members were unaware of that policy when the suit was filed. 476 U.S. 467, 482 (1986).

III.   Discussion

   A.   Review of the Commissioner's Decision

Davis's frustration is understandable. The SSA has changed its position concerning her past work history – and its effect on her benefits – several times without much explanation. Despite these administrative gyrations, the fact remains that Davis has yet to receive a final decision of the Commissioner which is subject to this Court's review pursuant to 42 U.S.C. § 405(g).

If Davis sent the SSA all of the "appeals" that she has provided to this Court, the Commissioner apparently failed to act on all of them. All of Davis's requests for review, however, have raised the same issue: whether she was entitled to DIB between April and December 1998 and January and June 2014. Moreover, it is clear that, the SSA, at a minimum, received and considered two of Davis's requests for reconsideration, dated June 11 and October 16, 2015. (See Cafaro Decl. ¶¶ 2(a), (c); id., Ex. A, C). The SSA denied those requests for reconsideration on February 23, 2016. (Wilder Decl. ¶ 2; id., Ex. A). Davis consequently is now at the stage where she may request a hearing before an ALJ regarding the February 23 determination, provided she does so promptly. In this manner, she will be able to pursue the necessary administrative

exhaustion of her claims. Since Davis has failed to take this step to date, the Court currently lacks jurisdiction to can consider her claims.

Nor can Davis successfully show that her failure to complete each of the steps in the SSA's administrative review process before filing this action should be excused. Unlike the circumstances in Bowen, Davis's allegations are inextricably linked to her demands for benefits. Moreover, she has made no showing that irreparable harm would result from requiring her to complete the administrative exhaustion of her claims. See Abbey, 978 F.2d at 44.

Accordingly, Davis's Amended Complaint should be dismissed for lack of subject matter jurisdiction. If Davis remains dissatisfied with the SSA's determination after she has fully exhausted her administrative remedies through a hearing before an ALJ and Appeals Council review, she may of course file a new civil action seeking judicial review pursuant to 42 U.S.C. § 405(g).

    B.    Discrimination

Finally, it bears mention that the Court also lacks subject matter jurisdiction to consider any discrimination, retaliation, harassment, or similar claims against the Commissioner that Davis may seek to assert. It is well-settled that the Act itself "does not bestow a private right of action for monetary relief." Purisima v. Astrue, No. 12 Civ. 3528 (WHP) (JLC), 2012 WL 5519295, at *3 (S.D.N.Y. Nov. 14, 2012) (citations omitted). The Act also does not make any "provision for remedies in money damages

against officials responsible for unconstitutional conduct that leads to the wrongful denial of benefits."  Schweiker v. Chilicky, 487 U.S. 412, 424 (1988).

Davis does not assert any additional basis for jurisdiction apart from the Act, but even if she had, sovereign immunity clearly would bar the prosecution of any claims against the Commissioner.  See Valdez v. United States, No. 08 Civ. 4424 (RPP), 2009 WL 2365549, at *4 (S.D.N.Y. July 31, 2009) ("[F]ederal officials acting in their official capacities[ ] are immune from suit absent an express waiver of sovereign immunity.") (citing United States v. Mitchell, 463 U.S. 206, 212 (1983) ("[T]he United States may not be sued without its consent and . . . the existence of consent is a prerequisite for [subject matter] jurisdiction.") (additional citations omitted)).  Furthermore, the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., does not provide a basis for any claim that the United States has waived its immunity, because it expressly precludes jurisdiction for claims against the Government arising under the Act.  See, e.g., Papadopoulos v. Astrue, No. 10 Civ. 7980 (RWS), 2011 WL 5244942, at *11 (S.D.N.Y. Nov. 2, 2011).

Accordingly, any claims apart from Davis's request for review of the Commissioner's benefits determination under the Act also must be dismissed.

IV.    Conclusion

For the foregoing reasons, the Commissioner's motion to dismiss, (ECF No. 15), should be granted, and this action dismissed.  **I note that Davis's time to request a hearing before the ALJ concerning the SSA's denial of two of her requests for reconsideration on February 23, 2016, will expire shortly.  Accordingly, she would be wise to submit an HA-501 form promptly to preserve her ability to seek judicial review if neither the ALJ not the Appeals Council grants the relief she seeks.**

V.    Notice of Procedure for Filing Objections to this Report and Recommendation

The parties shall have fourteen (14) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres, to my chambers at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Torres.  The failure to

file these timely objections will result in a waiver of those objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

       SO ORDERED.

Dated:      New York, New York
             April 18, 2016

_____
FRANK MAAS
United States Magistrate Judge

Copies to:
Defense counsel (via ECF)

Jane J. Davis (via U.S. Mail and email)
172 West 130th Street
Apt. 5A
New York, New York 10027
janjdavis@aol.com